IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MONTE A. INGRAM,

    Plaintiff,

    v.

MAJD ARNAOUT, *et al.*,

    Defendants.

CIVIL NO.: WDQ-10-3160

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Monte A. Ingram sued Dr. Majd Arnaout, Steven Bray, Christina Butler,[1] Michael Stouffer, and Correctional Medical Services, Inc. ("CMS") (collectively, the "defendants") under 42 U.S.C. § 1983 for denial of medical care.[2] For the following reasons, the complaint against Dr. Arnaout will be dismissed without prejudice; the Bray and Butler motions for summary judgment and the Stouffer and CMS motions to dismiss will be granted.

I.    Background[3]

Ingram is an inmate housed in the segregation unit at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. Compl. 1; Bray Aff. ¶ 4. At NBCI, medical services are provided by CMS, a private contractor. ECF No. 14 at 7; Butler Aff. ¶ 1. Stouffer

---

[1] The Clerk will amend the docket by changing "Christine" to "Christina." *See* Butler Aff.

[2] No hearing is necessary. *See* Local Rule 105.6 (Md. 2010).

[3] For the motions to dismiss, the well-pled allegations in Ingram's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing the motions for summary judgment, Ingram's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

is the Commissioner of Correction. ECF No. 17 at 1. Dr. Arnaout is a former NBCI doctor. *See* ECF No. 14 at 10. He is no longer a CMS employee.

Bray is a registered nurse at NBCI. Bray Aff. ¶ 1. Bray makes daily rounds in the segregation unit and treats inmates with medical emergencies. *Id.* ¶ 4. Otherwise, he only treats inmates during sick calls. *Id.* Ordering and administering medication to inmates is "not within [Bray's] scope of practice"; only pharmacy nurses and medication aides may dispense medicine. *Id.* ¶ 5. Bray also lacks authority to order security officers to remove inmates from the dispensary. *Id.* ¶ 6.

Butler is a medical records clerk at NBCI. Butler Aff. ¶ 1. Under a Department of Public Safety and Correctional Services policy, an inmate may review and receive copies of his medical records every six months (the "DPSCS Policy"). ECF No. 14, Ex. E at 17–18. Butler follows this policy. Butler Aff. ¶ 3.

Ingram has a reducible inguinal hernia. Getachew Aff. ¶ 3.[4] He has been given ibuprofen to alleviate pain, and the medical staff has taught him how to reduce the hernia. *Id.* ¶¶ 4–5. Ingram has also been given a hernia truss,[5] which he does not use because it is too small. *Id.*; Supp. to Compl. 5; ECF No. 14, Ex. D [hereinafter Medical File] at 30–31. Although Ingram complained that he needed his hernia removed, Dr. Arnaout refused to arrange surgery. *See* Supplement to Compl. 5.

On June 30, 2010, Ingram asked to review his sick call requests. Medical File 63. The next day, Butler noted that reviews and copies of medical records are permitted only every six

---

[4] An inguinal hernia develops when "intra-abdominal fat or part of the small intestine bulges through an opening in the lower abdominal muscles." Getachew Aff. 2 n.1. A "reducible" hernia "can be pushed back through the opening of the muscle." *Id.* n.2.

[5] A truss presses on the hernia to keep it reduced. Getachew Aff. 2 n.3.

2

months, and that Ingram should ask again in November 2010. *Id.* Ingram asserts that from July to September 2010, Butler "trashed" his sick call requests and denied him access to his medical records. Compl. 4. Butler asserts that she never removed, destroyed, or disposed of Ingram's sick call requests, and that she consistently followed the DPSCS Policy. Butler Aff. ¶¶ 3, 6.

On September 5, 2010, Ingram submitted a sick call request complaining about back pain. Medical File 18. On September 10, 2010, Bray examined Ingram's back; the examination was normal and revealed no swelling. Bray Aff. ¶ 3; Medical File 20. Ingram denied any tenderness or pain with movement. *Id.*; ECF No. 14 at 11. Bray advised Ingram to visit the dispensary if his pain continued or worsened. Bray Aff. ¶ 3.

Ingram has papules,[6] which the medical staff treated with selenium sulfide lotion until September 2010. Getachew Aff. ¶ 6; Medical File 50–52, 61–62. On September 25, 2010, a physician's assistant evaluated Ingram. Getachew Aff. ¶ 6. Ingram did not complain about his scalp. *Id.* The following day he requested a supply of the lotion. Medical File 32. On September 30, 2010, Dr. Arnaout examined Ingram and determined that scalp treatment was no longer necessary. *Id.* at 33.

On October 11, 2010, Butler tried delivering medical records to Ingram that he had requested, but Ingram refused to accept them. Butler Aff. ¶ 4.

On October 21 and November 2, 2010, Dr. Arnaout examined Ingram's scalp and determined that treatment was unnecessary. Medical File 40–41, 47–48. The complaint alleges that, presumably in connection with denying scalp medication, Dr. Arnaout made a "medical[ly] false diagnosis." Supplement to Compl., Ex. 1 at 5.

Ingram asserts that sometime before November 5, 2010, Bray disposed of Ingram's sick

---

[6] Small, rounded bumps on his scalp. Getachew Aff. 3 n.4.

call requests and falsified his medical records, withheld pain medication, refused to treat Ingram while making rounds, and ordered security to forcefully remove him from the dispensary. *See id.* Bray denies these allegations. Bray Aff. ¶¶ 4–7.

Ingram asserts that sometime before November 5, 2010, unspecified prison officials refused to give him treatment for a nosebleed and an infection, and he "black[ed] out" because of his back pain. *See* Compl. 5. CMS asserts that there is no record of these events. ECF No. 14 at 10–11. *See generally* Medical File.

On November 5, 2010, Ingram filed a *pro se* complaint against Dr. Arnaout, Bray, Butler, Stouffer, and CMS under 42 U.S.C. § 1983 for denial of medical care.[7] Dr. Arnaout was never served with the complaint.

On December 2, 2010, Ingram's new NBCI doctor prescribed scalp lotion for him. *See* Medical File 61–62. On January 15, 2011, Ingram refused to let a physician's assistant evaluate his scalp and hernia pain. *Id.* at 74.

In January and February 2011, Ingram requested access to his medical records. *Id.* at 65–70. On February 11, 2011, Butler tried to review Ingram's chart with him, but he refused to comply with the dress code and was unable to leave his cell for a chart review. Butler Aff. ¶ 5.

On February 15, 2011, Bray, Butler, and CMS moved to dismiss or, in the alternative, for summary judgment. ECF No. 14. On March 14, 2011, Stouffer moved to dismiss or, in the alternative, for summary judgment. ECF No. 17. Although Ingram was offered the opportunity to respond to the motions, *see* ECF Nos. 15, 18, he has not.

---

[7] On November 29, 2010, Ingram filed a supplement to his complaint.

4

II.   Analysis

   A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. The Court should "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

If the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, it treats the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8] In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[8] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

5

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Denial of Medical Care Claims

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment claim for the denial of medical care, a plaintiff must demonstrate that the defendant's act or omission was a "deliberate indifference to [a] serious medical need." *Id.* at 106. An official acts with deliberate indifference when he actually knows about and ignores "a substantial risk of serious injury to the detainee or [a] detainee's serious need for medical care."[9] *Young v. City of Mount Ranier*, 238 F.3d 567, 576–77 (4th Cir. 2001) (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A plaintiff may bring a civil action to redress an Eighth Amendment violation under 42 U.S.C. § 1983.

To state a § 1983 claim, the plaintiff must allege that the defendant (1) "acted personally

---

[9] The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier*, 896 F.2d at 852. An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318, 318–19 (4th Cir. 1975).

in the deprivation of [his] rights," or (2) is culpable under supervisory liability. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory defendants may be held liable under § 1983 if they (1) "failed promptly to provide an inmate with needed medical care," (2) "deliberately interfered with the prison doctors' performance," or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

The *respondeat superior* doctrine generally does not apply to § 1983 cases. *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). Thus, private corporations may not be held liable under § 1983 for their employees' actions when liability is based on *respondeat superior*. *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003).

1. The Complaint Against Dr. Arnaout Will Be Dismissed Without Prejudice

Ingram alleges that Dr. Arnaout refused to arrange necessary hernia surgery for him, and made a "medical[ly] false diagnosis"--presumably in connection with denying Ingram scalp medication. Supplement to Compl. 4; *id.*, Ex. 1 at 5. Because Dr. Arnaout was never served, Ingram's complaint against him will be dismissed without prejudice.

2. Bray's Motion to Dismiss or, in the Alternative, for Summary Judgment

Ingram asserts that Bray disposed of Ingram's sick call requests and falsified his medical records, withheld pain medication, denied Ingram treatment while making rounds in the segregation unit, and ordered a security officer to forcefully remove him from the dispensary. *See* Supplement to Compl., Ex. 1 at 5. Bray denies these allegations and asserts that he did not violate Ingram's constitutional rights. ECF No. 14 at 3, 12; Bray Aff. ¶¶ 4–7.

Ingram has not demonstrated that Bray acted with deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Assuming that Ingram's back pain was a serious

7

medical need, Bray did not ignore it. *See Young*, 238 F.3d at 576–77. Indeed, when Ingram submitted a sick call request complaining about his back pain, Bray conducted an examination five days later. Bray Aff. ¶ 3; Medical File 18, 20; ECF No. 14 at 11. Bray has also testified that he did not dispose of Ingram's sick call requests or falsify his medical records. Bray Aff. ¶ 7.

To the extent Ingram complains that Bray did not give him pain medication for his back, Bray has sworn that because only pharmacy nurses and medication aides may dispense medication, he is not authorized to give or deny medicine. *See id.* ¶ 5. At the examination, Bray told Ingram to visit the dispensary if his back pain continued or worsened. *Id.* ¶ 3.

Further, although Ingram asserts that security removed him from the dispensary at Bray's command, Bray's uncontradicted testimony is that he lacks authority to order security to remove inmates, and did not do so. *See* Supplement to Compl., Ex. 1 at 5; Bray Aff. ¶ 6. Bray has also sworn that he did not deny Ingram treatment when making medical rounds in Ingram's unit. *Id.* ¶ 4. When making rounds, Bray is authorized to treat only inmate emergencies, *id.*; Ingram has not asserted that he sought emergency treatment from Bray.

Ingram has not contradicted Bray's affidavit or opposed his arguments. As there is no genuine dispute of fact, Bray's motion for summary judgment must be granted.[10]

3. Butler's Motion to Dismiss or, in the Alternative, for Summary Judgment

Ingram asserts that from July to September 2010, Butler disposed of his sick call requests and denied him access to his medical records. Compl. 4. Butler denies these allegations and asserts that she followed the DPSCS Policy regarding Ingram's requests to review his medical file. Butler Aff. ¶¶ 3–6.

---

[10] *See, e.g., Johnson v. Mickel*, No. JFM-10-729, 2011 WL 629965, at *6 (D. Md. Feb. 11, 2011) (granting summary judgment to prison medical providers against inmate who asserted that he was denied medical care and that his medical records were falsified; his records and the medical providers' affidavits refuted these "bald allegations").

To the extent Ingram asserts that Butler knew about and ignored Ingram's serious medical needs by disposing of his sick call requests for hernia, scalp, and back treatment, Butler has testified that she never removed, destroyed, or disposed of his requests. Butler Aff. ¶ 6; *see Young*, 238 F.3d at 576–77. Indeed, the record reveals that medical providers followed-up on the sick call requests that Ingram submitted from July to September 2010. *See, e.g.*, Medical File 1, 8, 30.

Regarding Ingram's assertion that Butler denied him access to his medical records, Butler has testified that she consistently complied with the DPSCS Policy, which allows prisoners to review and copy medical records only every six months. ECF No. 14, Ex. E at 17–18; *see, e.g.*, Medical File 63 (Butler's July 1, 2010 note to Ingram that he would be eligible to review and copy his chart in November 2010). Butler has also sworn that when she tried to give Ingram his medical records and review his chart with him, he refused to accept the records or meet with her. Butler Aff. ¶¶ 4–5.

Ingram has not opposed Butler's arguments or contradicted her affidavit. As there is no genuine dispute of fact, Butler's motion for summary judgment must be granted.[11]

4. Stouffer's Motion to Dismiss or, in the Alternative, for Summary Judgment

Ingram asserts without elaboration that Stouffer failed to investigate his allegations of "deni[al] of treatment and false medical reports." Supplement to Compl., Ex. 1 at 9. Stouffer asserts that Ingram has failed to state a claim. *See* ECF No. 17 at 4.

Because Ingram has not alleged that Stouffer knew about and ignored his allegations of

---

[11] *See, e.g., Owens v. Harrison*, No. 5:08-CT-3100-FL, 2010 WL 2680339, at *4 (E.D.N.C. July 6, 2010) (granting summary judgment to prison officials against a prisoner who asserted that his sick call requests had been rejected; he had not demonstrated "how the [officials] failed to respond to his sick call requests or were deliberately indifferent to [his] medical needs").

withheld treatment and falsified medical reports, Ingram has not shown that Stouffer acted with deliberate indifference to these purported violations. *See Young*, 238 F.3d at 576–77. Stouffer has no supervisory liability because Ingram has not alleged that Stouffer failed to provide prompt care, interfered with medical procedures, "tacitly authorized," or was indifferent to constitutional violations by medical providers. *See Miltier*, 896 F.2d at 854. Thus, Stouffer's motion to dismiss must be granted.

5. CMS's Motion to Dismiss or, in the Alternative, for Summary Judgment

Ingram alleges that CMS "is responsible" for the defendants' "action[s] and violation[s]." Compl. 6. He also asserts that unspecified prison officials refused to give him medication for a nosebleed and an infection, and he lost consciousness because of his back pain. *Id.* CMS asserts that it is a corporate entity and is not liable under § 1983. ECF No. 14 at 7.

If Ingram is asserting that unspecified officials acted with deliberate indifference to his serious medical needs, the record does not show that he complained about a nosebleed, had an infection requiring treatment, or lost consciousness from back pain. *See generally* Medical File. Further, had Ingram established that unknown officials or the defendants violated his constitutional rights, CMS is merely a private corporation that has contracted with NBCI to provide medical services through its employees and agents. *See* ECF No. 14 at 7; Butler Aff. ¶ 1. Because corporations have no *respondeat superior* liability under § 1983 for their employees' acts, CMS's motion to dismiss must be granted.[12]

---

[12] *Rodriguez*, 338 F.3d at 355; *see also Romero v. Barnett*, No. DKC-09-2371, 2010 WL 305668, at *3 n.9 (D. Md. Aug. 2, 2010) (granting CMS's motion to dismiss because *respondeat superior* does not apply to § 1983 actions).

III. Conclusion

For the reasons stated above, the complaint against Dr. Arnaout will be dismissed without prejudice, and the Bray and Butler motions for summary judgment and the Stouffer and CMS motions to dismiss will be granted.

4/27/11
Date

William D. Quarles, Jr.
United States District Judge